IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIG INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14 CV 4007 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| ZP TRANSPORT INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In this subrogation action, Plaintiff LIG Insurance Company ("Plaintiff") seeks reimbursement of the $796,559.17 insurance claim that it paid to its insureds, among other relief. Plaintiff insures LG Electronics, Inc.; LG Electronics Columbia Ltda.; LG Electronics Peru S.A.; LG Electronics Panama, S.A.; LG Electronics Chile Ltda.; and Brightstar Fueguina S.A. Plaintiff filed this action against Defendants ZP Transport Inc. ("ZP Transport"); J&T Trucking of Tampa Bay Inc. ("J&T Trucking"); FNS, Inc. ("FNS"); and Tomas Hernandez ("Mr. Hernandez") after a shipment of electronics was stolen. Before the Court are two separate motions for summary judgment, one filed by J&T Trucking and the other filed by ZP Transport. For the following reasons the motions are denied.

**I. BACKGROUND[1]**

The companies insured by Plaintiff make consumer electronics such as cell phones and televisions. This case involves one of their international shipments of electronics ("the shipment"), which went missing after being loaded onto a semi-trailer truck that departed from a warehouse near O'Hare International Airport in Chicago, Illinois. The shipment, which

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts, if any, within the text.

contained mostly cell phone parts, has not yet been recovered. The electronics companies planned to ship their goods from Seoul, South Korea to Chicago by air, then have the goods transferred to a motor carrier that would drive the goods to Miami, Florida. Finally, the goods were to be sent to Tierra Del Fuego, Argentina. The truck carrying the shipment never arrived at its intended destination in Miami.

In accordance with the air waybill, the shipment left Seoul in the care and custody of Pantos Logistics Co. Ltd. ("Pantos"). After arriving in Chicago on September 9, 2013, the shipment was stored at a warehouse operated by FNS, a subsidiary of Pantos. Next, Chung Mo Yang, an employee for FNS, contacted Eric Pae ("Mr. Pae"), the Chicago branch manager at ZP Transport, to arrange transportation for the shipment from the FNS warehouse in Franklin Park, Illinois (a short distance from O'Hare International Airport) to Miami.

Mr. Pae then used Internet TruckStop, a web-based service for the transportation industry, to advertise his company's need for a trucking company to haul the shipment and requested that any interested parties contact him. Mr. Pae was contacted by a company called "J&T Trucking Company of Tampa Bay, Inc.," but he missed the initial phone call. Pl.'s Schedule of Exs. Supp. its Resp. in Opp'n to Defs.' Mot. for Summ. J., Ex. P-1 ¶ 16 [hereinafter, "Mr. Pae's Aff."]. He called the company back on the number it had listed, (813) 727-6967, but no one answered. Later that day, Mr. Pae received a call from someone purporting to be an agent of J&T Trucking, but on a different phone number listed as (813) 465-3629. The individual confirmed that J&T Trucking was interested in hauling the shipment to Miami. Not much later, Mr. Pae received a fax including J&T Trucking's Certificate of Liability Insurance, IRS Form W-9, and the Federal Motor Carrier Safety Administration Certificate; he began processing the paperwork to arrange for the transport. See Mr. Pae's Aff. at ¶¶ 14, 18, and pp. 23-25. A

representative of J&T Trucking signed, and faxed back to Mr. Pae, an agreement in which J&T Trucking was to be paid $2,800 to move the freight. Mr. Pae also needed the name of the driver and the trailer number, so he called J&T Trucking back on the company's (813) 465-3629 phone number. While no one initially answered his call, someone named "Frank," later known as Frank Diaz, returned Mr. Pae's phone call and gave him the information he needed. Mr. Pae's Aff. at ¶ 19. Mr. Pae informed FNS of J&T Trucking's involvement. By the end of the day on September 9, 2013, everything was set for J&T Trucking to pick up the shipment from the FNS warehouse on the morning of September 11, 2013, and deliver it to Miami.

When the 11th arrived, so did the truck from J&T Trucking. Mr. Pae also went to the FNS warehouse to ensure that the shipment was loaded properly and to be available if any unexpected problems arose. Mr. Pae says that because ZP Transport had never contracted with J&T Trucking before, he "took pictures of the truck, the trailer, its authority, and its license plates." Mr. Pae's Aff. at ¶ 25. Mr. Hernandez's Pennsylvania-issued commercial driver's license was also photocopied. See Mr. Pae's Aff. at 33-34. The shipment, containing approximately 4,691 kilograms of electronics, was loaded onto a blue truck with a placard stating:

<pre>
            J&T Trucking
          of Tampa Bay, Inc.
           USDOT# 2368096
            MC# 812134C
            KYU# 324427
             VIN# 876310
              GW 80,000
</pre>

Id. at pp. 35-36. The driver, ostensibly Tomas Hernandez, signed the bill of lading titled the "Straight Bill of Lading." ZP Transport's Rule 56(c)(1)(A) Statement of Facts, Ex. 1 at 27. The Straight Bill of Lading designated the route from Franklin Park to Miami, named ZP Transport

as the "Carrier," and contained Mr. Hernandez's signature verifying that the shipment was received in good condition. Id. At that point, nothing about transporting the shipment seemed out of the ordinary. The truck left for Miami but never reached its intended destination.

The overall chain of control is allegedly Pantos, to FNS, to ZP Transport, to J&T Trucking. When the shipment was reported stolen, the incident was investigated. Nothing was recovered and Plaintiff ultimately reimbursed its insureds for the lost electronics. The parties have not informed the Court regarding the status of any criminal investigation or prosecutions related to this matter, if any.

J&T Trucking disputes that it was ever involved in the transportation of the missing goods, claiming that this is a case of identity theft. J&T Trucking avers that it never employed a Tomas Hernandez. It only owns one truck, which is white in color. And it only employed one driver, Mijail Zerquera ("Zerquera"), who was in Louisville, Kentucky with the white truck on September 11, 2013.

As subrogee, Plaintiff filed this lawsuit alleging two causes of action. The first cause alleges that ZP Transport, J&T Trucking, and Mr. Hernandez violated the Carmack Amendment, 49 U.S.C. § 14706, acted negligently, and breached their obligations as bailees. The second cause alleges that FNS negligently failed to verify Mr. Hernandez's identity and credentials. Defendant J&T Trucking has filed a motion for summary judgment, arguing that it was not actually involved in the shipment; therefore, judgment should be entered in its favor. Defendant ZP Transport filed a separate motion for partial summary judgment, arguing that a clause in the air waybill limits its liability to $20 per kilogram of goods shipped; thus its potential liability should be capped at $93,820. The motions are now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Advance Cable Co. LLC v. Cincinnati Ins. Co., LLC, 788 F.3d 743, 746 (7th Cir. June 11, 2015) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if it is identified by the law as affecting the outcome of the case. An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Hess v. Bresney, 784 F.3d 1154, 1158 (7th Cir. 2015) (internal quotation marks and citations omitted). When ruling on a summary judgment motion, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Id. The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Stokes v. Bd. of Educ. of the City of Chi., 599 F.3d 617, 619 (7th Cir. 2010).

### B. J&T Trucking's Motion for Summary Judgment

J&T Trucking denies any involvement in the transportation of the missing shipment. It argues that the Carmack Amendment is inapplicable because it did not contract to transport the shipment and no theory of agency can hold it liable. The Carmack Amendment "has been interpreted by the Supreme Court and [the Seventh Circuit] to provide that a common carrier is liable for all losses which occurred while the goods were being transported by it, unless the carrier can demonstrate it is free from fault." Allied Tube & Conduit Corp. v. S. Pac. Transp. Co., 211 F.3d 367, 369 (7th Cir. 2000) (internal quotations and citations omitted). To recover damages, "a plaintiff must first establish a *prima facie* case by providing evidence that (i) the goods in question had been delivered to the carrier in good condition; (ii) the goods had arrived

5

at the final destination in a damaged or diminished condition, and (iii) the damages can be specified." Pharma Bio, Inc. v. TNT Holland Motor Exp., Inc., 102 F.3d 914, 916 (7th Cir. 1996). Once a plaintiff meets its burden, a carrier's defenses are limited by statute and it can avoid liability only if "the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.'" Id. (quoting Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964)).

To support its contention that it never contracted with ZP Transport, J&T Trucking submits the following evidence: (1) an affidavit from Francisco J. Jimenez, the president and sole shareholder of J&T Trucking; (2) an affidavit from Tamara Chirino, one of the dispatchers that worked for J&T Trucking in September 2013; (3) a picture of the placard on its truck; (4) its Certificate of Liability Insurance; (5) driving records and time logs for Zerquera for September 2013, one of which, has a handwritten note that Zerquera was off-duty in Louisville from September 9th to 11th; (6) and a background check on Zerquera conducted by a private third-party, which includes on-line articles about Zerquera's conviction in 2010 for stealing a truck load of Jim Beam and other alcohol; (7) and a deposition transcript for Jack Han, a representative of FNS. J&T Trucking urges the Court to accept its version of the facts, asserting that Mr. Hernandez never worked for the company and it never contracted to transport the electronics. However, this is something the Court cannot do at the summary judgment stage of the litigation. Hess, 784 F.3d at 1158; see also Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (The Court "must look therefore at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true.").

Viewing the evidence in the light most favorable to the nonmovant, the Court finds that a contract existed between J&T Trucking and ZP Transport for the transportation of the shipment from Franklin Park to Miami. Mr. Pae, an employee of ZP Transport advertised and extended an offer to any interested trucking company. A representative claiming to be an employee of J&T Trucking contacted Mr. Pae and agreed to move the shipment. A signed formal agreement even reflects that J&T Trucking was paid $2,800. The placard on the truck that picked up the shipment is an identical match to the placard that J&T Trucking now submits (even the font and arrangement of the text appear to be the same). The insurance certificate faxed to Mr. Pae is also an exact match to the insurance certificate now submitted by J&T Trucking. Furthermore, the address on the insurance certificate and the IRS Form W-9 is 4541 W. Henry Ave., Tampa FL 33614, which J&T Trucking does not deny is its address. The evidence shows that there was an offer, acceptance, and consideration; sufficient to establish that J&T Trucking contracted to transport the shipment. J&T Trucking's defense of fraud and identity theft is one that will have to be tried to a jury. Therefore, the Carmack Amendment applies to this case.

To establish its *prima facie* case under the Carmack Amendment, Plaintiff submits a bill of lading stating that the shipment was in good condition when delivered to the carrier, signed by Hernandez who purported to be an employee of J&T Trucking. The shipment never arrived at the final destination, diminishing the value of the shipment to zero. And Plaintiff has invoices from the sale of the electronics that support its damages amount of $796,559.17. Therefore, Plaintiff has met its burden. J&T Trucking's argument, essentially a factual dispute, does not assert a statutorily acceptable defense. J&T Trucking's evidence may be weighed by the jury, but it does not resolve this litigation at the summary judgment stage. The Court finds that a reasonable jury could return a verdict for Plaintiff and denies J&T Trucking's motion for summary judgment.

## C. ZP Transport, Inc.'s Motion for Partial Summary Judgment

ZP Transport argues that its liability should be limited to $93,820 on the basis that section four of the air waybill limits the carrier's liability to $20 per kilogram of lost or damaged goods. ZP Transport was not a party to the air waybill, but argues that the air waybill applies regardless, because it was an agent hired by Pantos. Thus, the damages for approximately 4,691 kilograms of lost goods should be limited to $93,820. For legal authority, ZP Transport's initial motion relies solely on <u>HIH Marine Ins. Servs., Inc. v. Gateway Freight Servs.</u>, 116 Cal. Rptr. 2d 893 (Cal. Ct. App. 2002). Plaintiff responds that the Carmack Amendment applies because ZP Transport was a party to the Straight Bill of Lading, a bill of lading separate from the air waybill. Thus, ZP Transport is liable for the full amount of loss. In its reply, ZP Transport adds to its argument, relying on <u>Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.</u>, 561 U.S. 89 (2010) and <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14 (2004). ZP Transport contends that the Carmack Amendment does not apply in this case because this was an international shipment pursuant to a single bill of lading called a "through" bill of lading.

The Carmack Amendment, an amendment to the Interstate Commerce Act, governs domestic, not foreign shipments. <u>Capitol Converting Equip., Inc. v. LEP Transp., Inc.</u>, 965 F.2d 391, 394 (7th Cir. 1992). To determine the route of a shipment, and the applicability of the Carmack Amendment, courts look to a shipment's bill of lading. <u>Id.</u> A "through" bill of lading is "issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States," and does not fall under the Carmack Amendment. <u>Id.</u> "Whether a bill of lading is a 'through' bill of lading is predominantly a question of fact." <u>Id.</u>

In this case, ZP Transport has submitted to the Court a Straight Bill of Lading, which is a domestic bill of lading separate from the air waybill. See ZP Transport's Rule 56(c)(1)(A)

8

Statement of Facts, Ex. 1 at 27. The route on the bill of lading begins at the FNS warehouse in Franklin Park and ends in Miami. The Straight Bill of Lading names ZP Transport as the carrier. It also does not have a limitation of liability clause. ZP Transport's contention disregards its own evidence. The Court finds that the domestic segment of the shipment was covered by a separate domestic bill of lading, which invokes the Carmack Amendment. Capitol Converting Equip., Inc., 965 F.2d at 394 (The Carmack Amendment's "jurisdiction does not extend to shipments by water, rail or motor carriers from a foreign country to the United States, *see* 49 U.S.C. §§ 10501, 10521, 10561, unless a domestic segment of the shipment is covered by a separate domestic bill of lading.") (emphasis added).

The cases cited by ZP Transport are distinguishable because the facts of those cases involved "through" bills of lading. Kawasaki Kisen Kaisha Ltd., 561 U.S. at 93 ("These cases concern through bills of lading covering cargo for the entire course of shipment, beginning in a foreign, overseas country and continuing to a final, inland destination in the United States."); Norfolk S. R.R. Co., 543 U.S. at 18-19 ("This controversy arises from two bills of lading (essentially, contracts)…to arrange for delivery by 'through' (*i.e.,* end-to-end) transportation."); HIH Marine Ins. Servs., Inc., 116 Cal. Rptr. 2d at 895 ("These [international] air waybills… represented the only documentation of the contract of carriage"). Thus, the Court finds them unpersuasive.

Furthermore, ZP Transport's legal argument completely disregards Supreme Court precedent; which states that the Carmack Amendment "makes carriers liable for the full actual loss, damage or injury…caused by them to property they transport, and declares unlawful and void any contract, regulation, tariff, or other attempted means of limiting this liability." Mo. Pac. R.R. Co., 377 U.S. at 137 (internal quotation omitted). ZP Transport's argument is akin to the

9

argument of the dissenting justice in Missouri, whom believed that the contract between the parties and the relevant tariff should have controlled; however, that was the minority opinion. Accordingly, ZP Transport will be "liable for the full actual loss" it caused unless it can show it was not at fault. Mo. Pac. R.R. Co., 377 U.S. at 137; see also Allied Tube & Conduit Corp., 211 F.3d at 369; Pharma Bio, Inc., 102 F.3d at 916.

### III. CONCLUSION

The evidence viewed in the light most favorable to Plaintiff shows that J&T Trucking contracted to transport the shipment and Plaintiff established its *prima facie* case under the Carmack Amendment. Therefore, J&T Trucking's motion for summary judgment is denied. The Carmack Amendment governs the allegations against ZP Transport; therefore, ZP Transport's motion for partial summary judgment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*
CHARLES RONALD NØRGLE, Judge
United States District Court

DATE: July 31, 2015